THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SIMON BARASH, Defendant-Appellant.

Third District    No. 3—00—0972

Opinion filed November 9, 2001.

Jed Stone (argued) and John Curnyn, both of Stone & Associates, of Waukegan, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and William L. Browers and Karen Kaplan (argued), Assistant Attorneys General, of counsel), for the People.

PRESIDING JUSTICE HOMER delivered the opinion of the court:
The defendant, Simon Barash, was charged with cannabis trafficking (720 ILCS 550/5.1 (West 2000)) and unlawful possession of can-

nabis with intent to deliver (720 ILCS 550/5(g) (West 2000)). He filed a motion to bar prosecution and dismiss the indictment based on constitutional and statutory grounds of double jeopardy. The motion was denied, and the defendant filed an interlocutory appeal alleging that the Illinois prosecution is barred under section 13(b) of the Cannabis Control Act (720 ILCS 550/13(b) (West 2000)). After our careful review, we reverse.

## BACKGROUND

On December 19, 1998, the defendant was driving a black Cadillac eastbound on Interstate 80 through Bureau County. At approximately 5:38 p.m., Illinois State Police Master Sergeant John Balma attempted to pull over the car driven by the defendant as well as a green Cadillac traveling in front of the defendant's car because he believed the vehicles were obstructing traffic. Both the defendant's black Cadillac and the green Cadillac had Michigan license plates and were registered to the same individual. Both cars pulled over to the side of the highway, but the defendant pulled back onto the highway after Balma pulled in front of his car and approached the green Cadillac only. When Balma saw the defendant pull back onto the highway, he radioed headquarters to look out for the defendant's car because he believed the defendant had purposely fled the traffic stop.

Subsequent to the traffic stop, Balma conducted a search of the green Cadillac and found 260 to 270 pounds of marijuana in the trunk. The driver of the green Cadillac, Russell Diehl, allegedly told Balma that the defendant was a friend of his. After transporting Diehl and the green Cadillac to the Illinois State Police District 17 Headquarters, Balma and State Trooper Michael Ross went to look for the defendant's car.

Approximately an hour and a half after the initial stop, the defendant's car was pulled over by State Trooper Jeff Grey on Interstate 80, approximately 24 miles from where the car was originally pulled over by Balma. The defendant and his passenger, Pricilla Tipton, produced identification when they were asked to do so by Grey. Grey then reported to district headquarters that he had stopped the defendant's car. After Balma and Ross arrived at the scene, the defendant and Tipton were placed in Grey's squad car and driven to District 17 Headquarters.

Ross drove the defendant's car to district headquarters where an inventory search was performed. No drugs were found in the car. A white envelope was found in the glove box, which contained a cellular phone number belonging to the driver of the green Cadillac.

At district headquarters, members of the District 17 Drug Task

Force interviewed the defendant and the other individuals in custody. After the defendant was questioned, Ross transported the defendant and Tipton to the Bureau County jail, where they spent the weekend.

The Bureau County State's Attorney filed charges against the defendant for cannabis trafficking on the following Monday, but those charges were dismissed on the same day. After the charges were dismissed, the defendant and Tipton were taken to District 17 State Police Headquarters, where the defendant was interviewed by Inspector Girton and Inspector Lawson of the Drug Task Force.

The next day, the defendant called Inspector Girton, requesting a ride to the airport. After Girton drove the defendant to the bank to cash some checks, Inspector Lawson asked for a tape recorded statement from the defendant. The defendant agreed and gave a tape recorded statement at District 17 Headquarters. Following that statement, Lawson and Girton drove the defendant and Tipton to Midway Airport.

Nine months later, the Attorney General's office presented the defendant's case before a statewide grand jury. The grand jury returned a two-count indictment against the defendant for the offenses of cannabis trafficking and unlawful possession of cannabis with intent to deliver.

On January 27, 2000, an Arizona grand jury returned a multiple-count indictment against many individuals, including the defendant. On November 29, 2000, the defendant pled guilty in Arizona to count I of the indictment, illegally conducting an enterprise, a Class 3 felony. The factual basis for the plea consisted of the events that occurred on December 19, 1998, in which the defendant admitted participating in transporting 260 to 270 pounds of marijuana into Illinois for the purpose of selling it in Michigan.

On December 14, 2000, the defendant filed a motion to bar prosecution in Illinois and to dismiss the indictment based on constitutional and statutory double jeopardy grounds. The trial court denied the motion, and the defendant filed an interlocutory appeal pursuant to Supreme Court Rule 604(f) (188 Ill. 2d R. 604(f)).

## ANALYSIS

■ The defendant's sole contention is that his prosecution in Illinois for cannabis trafficking and possession of cannabis with the intent to deliver is barred because of his prior conviction of illegally conducting an enterprise in Arizona. In support of his argument, the defendant relies on section 13(b) of the Cannabis Control Act, which states, "A conviction or acquittal, under the laws of the United States or of any State relating to Cannabis for the same act is a bar to prose-

cution in this State." 720 ILCS 550/13(b) (West 2000). Resolution of this issue requires us to determine whether the defendant (1) was convicted, (2) of a cannabis-related offense, (3) for the same act prosecuted in Illinois.

We find that the defendant's guilty plea in Arizona is a conviction under Arizona law. See *State v. Superior Court,* 138 Ariz. 4, 6, 672 P.2d 956, 958 (1983) (explaining that "conviction" means the time when the person has been found guilty or has pled guilty even though there has been no sentence or judgment entered by the court). We further find that the defendant's conviction relates to cannabis because the defendant pled guilty to illegally conducting an enterprise based on his acts of possessing and trafficking marijuana. Consequently, the only issue remaining is whether the defendant's conviction in Arizona involved the same act as the charges for which the defendant was indicted in Illinois.

█ The decision in this case hinges on the interpretation of section 13(b) of the Cannabis Control Act. Since statutory construction is a question of law, this court will conduct a *de novo* review. *People v. Hall,* 195 Ill. 2d 1, 21, 743 N.E.2d 126, 138 (2000).

In order for section 13(b) of the Cannabis Control Act to serve as a bar to the defendant's prosecution in Illinois, the defendant's Arizona conviction must have been for the "same act" as the charges brought against the defendant in Illinois. 720 ILCS 550/13(b) (West 2000). The State contends that the Arizona conviction and Illinois crimes are not for the same act because different elements must be proven for those crimes. The defendant does not dispute that the crimes involve different elements but argues that the conviction in Arizona and the charges in Illinois are based on the same act of possessing and trafficking marijuana in Illinois.

█ The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Woods,* 193 Ill. 2d 483, 487, 739 N.E.2d 493, 495 (2000). The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *Woods,* 193 Ill. 2d at 487, 739 N.E.2d at 495. A dictionary may be used as a resource to determine the ordinary and commonly accepted meaning of words. *Melliere v. Luhr Brothers, Inc.,* 302 Ill. App. 3d 794, 797, 706 N.E.2d 40, 42 (1999). Black's Law Dictionary defines "same" as "[i]dentical, equal, equivalent" and defines "act" as "a performance" or "a deed." Black's Law Dictionary 25, 1340 (6th ed. 1990). Based on these definitions, if the defendant's conviction in Arizona is for the identical deed with which the defendant was charged in Illinois, the Illinois charges cannot stand.

◼ The intent of the legislature in enacting section 13(b) of the Cannabis Control Act can be further ascertained by examining this court's interpretation of a parallel provision in the Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 2000)). See *People ex rel. Power v. One 1979 Chevrolet Camaro*, 96 Ill. App. 3d 109, 420 N.E.2d 770 (1981). Section 409 of the Controlled Substances Act provides in part, "a conviction or acquittal, under the laws of the United States or of any State relating to controlled substances, for the same act is a bar to prosecution in this State." 720 ILCS 570/409 (West 2000). In discussing section 409 of the Controlled Substances Act, this court explained that the objective of that provision was to prevent multiple criminal drug prosecutions against an accused in Illinois based upon the "same criminal conduct for which the accused had already been convicted or acquitted in either a Federal or other sister State court." *One 1979 Chevrolet Camaro*, 96 Ill. App. 3d at 112, 420 N.E.2d at 772. Because the language of section 13(b) of the Cannabis Control Act is nearly identical to that of section 409 of the Controlled Substances Act, the court's reasoning in *One 1979 Chevrolet Camaro* is applicable here. As section 409 of the Controlled Substances Act seeks to prevent multiple drug prosecutions against an accused based on the same criminal conduct, section 13(b) of the Cannabis Control Act seeks to prevent multiple prosecutions of a defendant for cannabis based on the defendant's same criminal conduct.

◼ Comparison of the Illinois double jeopardy statute and section 13(b) of the Cannabis Control Act also reveals the weakness of the State's claim that the same elements must be present in the crime charged and the crime formerly prosecuted. See 720 ILCS 5/3—4(c) (West 2000). Section 3—4(c) of the Criminal Code of 1961 (Code) states that a prosecution is barred if the former prosecution "[r]esulted in either a conviction or acquittal, and the subsequent prosecution is for the same conduct, *unless each prosecution requires proof of a fact not required in the other prosecution*, or the offense was not consummated when the former trial began." (Emphasis added.) 720 ILCS 5/3—4(c) (West 2000). On its face, section 3—4(c) of the Code bars prosecution for a subsequent crime arising out of the defendant's same conduct only if the former crime shares the same elements as the subsequent crime. Section 13(b) of the Cannabis Control Act, on the other hand, does not contain such restrictive language. If the legislature had intended section 13(b) of the Cannabis Control Act to be as restrictive as section 3—4(c) of the Code, the legislature would have so provided. See *People v. Woods*, 193 Ill. 2d at 487, 739 N.E.2d at 495 (explaining that the best evidence of legislative intent is the language used in the statute itself). When reviewing a statute, a court is limited by rules of

statutory construction and cannot add words to a statute or change its meaning, nor can a statute be construed so as to interject provisions not found in the statute no matter how desirable or beneficial they may be. *One 1979 Chevrolet Camaro*, 96 Ill. App. 3d at 111, 420 N.E.2d at 772.

Based on the language of section 13(b) of the Cannabis Control Act, it is not necessary for us to determine if the crime the defendant committed in Arizona contains exactly the same elements as the crimes for which he was indicted in Illinois. All that is necessary is to determine whether the defendant's conviction in Arizona was for the same acts for which he is charged in Illinois. Based on the factual basis of the defendant's guilty plea in Arizona, the acts serving as the basis for the Arizona conviction and the Illinois charges are the same. The factual basis for the defendant's plea of guilty in Arizona is as follows:

"MR. DEBUS [defense counsel]: That on December 18th [*sic*], of 1998, some time around 5:30 p.m., Mr. Barash was traveling in a lead car. A Russell Diehl was traveling in the following car, I think it's kind of typical in some of these situations. Mr. Diehl, I think D-i-e-h-l, was stopped by an Illinois State Trooper, they were on Highway 80, Mr. Balma, B-a-l-m-a, his car was searched and 260 - 270 pounds of marijuana was found.

Mr. Barash left the scene, was not apprehended at that time, was later apprehended. The marijuana was, marijuana that Mr. Barash knew about, and was cooperating in the transporting of it by being the lead car with Mr. Diehl being the following car.

It was that particular transaction that was part of a greater conspiracy over the time period described in this count with Mr. Diehl, and that's one event that we believe is sufficient for a factual basis for the charge of Count 1, illegally conducting an enterprise.

THE COURT: In other words, during this period of time there was an enterprise ongoing which was to transport marijuana from Arizona back to Michigan, as I understand, to Illinois, is that correct?

THE DEFENDANT: That's correct.

THE COURT: You and Mr. Debus outlined one such event in that enterprise where you were in the lead car; was that all true?

THE DEFENDANT: That is true, was true, other than I was actually driving behind Mr. Diehl.

THE COURT: All right. But the idea, both of you were together in transporting the marijuana?

THE DEFENDANT: Yes, it is, Your Honor.

THE COURT: Where were you stopped?

THE DEFENDANT: On Interstate 80. I'm not exactly—it was in a county called Burrow [*sic*] County.

MR. DEBUS: In Illinois.

THE COURT: In Illinois. All right. The marijuana came from Arizona?

THE DEFENDANT: Yes, the marijuana came up in Arizona.

* * *

THE COURT: The marijuana was going to be sold?

THE DEFENDANT: Right.

THE COURT: Money made on this transaction?

THE DEFENDANT: Yes, yes there was, Your Honor."

■ As the factual basis reflects, the defendant's guilty plea in Arizona for illegally conducting an enterprise was based on the same acts for which the defendant was charged with cannabis trafficking and unlawful possession of cannabis with the intent to deliver in Illinois. The Illinois charge of cannabis trafficking requires that the defendant knowingly caused more than 2,500 grams of cannabis to be brought into the State of Illinois with intent to deliver the cannabis in this or any other state. 720 ILCS 550/5.1 (West 2000). The crime of unlawful possession of cannabis with intent to deliver requires that the defendant knowingly possessed more than 5,000 grams of cannabis with the intent to deliver. 720 ILCS 550/5(g) (West 2000). The defendant's guilty plea in Arizona is based specifically on the acts of the defendant (1) knowingly possessing and causing (2) 260 to 270 pounds of cannabis (over 5,000 grams) (3) to be brought into Illinois (4) with the intent to deliver it in Michigan (another state). Those acts are the same acts for which Illinois is seeking to prosecute the defendant.

## CONCLUSION

Because the Arizona conviction was based on the same acts with which the defendant was charged in Illinois, his prosecution in Illinois is barred by section 13(b) of the Cannabis Control Act. Consequently, the judgment of the circuit court of Bureau County is reversed.

Reversed.

LYTTON and McDADE, JJ., concur.